Allen, P.
This was an action of ejectment instituted before the present Code took effect. On the trial, the lessors of the plaintiff, to make out their title, read to the jury a grant from the commonwealth to them, for six hundred and thirty acres, dated the 30th of December 1842; and offered evidence to show the identity of the land claimed with that described in their patent, and that the defendants were in the possession of it. There was no proof that the lessors of the plaintiff had ever taken possession of the land granted to them. On the contrary, their own evidence tended to show, that the defendants, and those under whom they claimed, had been in the actual possession of the land in controversy, or the portions held by them respectively, anterior to and at the date of the said grant.
The lessors of the plaintiff having closed their testimony in chief, the defendants thereupon offered in evidence the record and proceedings, showing the forfeiture and sale of sixteen thousand eight hundred acres of land which had been granted by the state to Albert Gallatin and Savary De Yalcoulon, by grant bearing date the 17th of March 17SS. From the commissioners’ report, being part of said proceedings, it appeared that the tract of sixteen thousand eight hundred acres of land was conveyed by the patentees to Kobert Morris, by deed dated the 7th of May 1794, who conveyed the same by deed dated the 5th of March 1795, to Thomas Willing, John Nixon and John Barclay, in trust for an association of individuals styled *32 The North American Land Company; and that the was forfeited to the commonwealth for the failure have the same properly entered on the revenue books, and charged with taxes.
This report of the commissioners of delinquent and l x forfeited lands was dated on the 29th of September 1842. On the 13th of October 184-2 the same was approved and confirmed; and a decree entered by the judge ordering the land to be sold. In pursuance of the decree the land was sold by the commissioners on the first day of the November County court for Kanawha county for the year 1842, and purchased by Josiah M. Steed, as agent of the North American land company. The sale being reported to the Circuit court of Kanawha county, was confirmed by a final decree of that court entered on the 3d day of June 1843, and the commissioners were directed to convey the land to the purchaser on the payment of the deferred installments.
The defendants also read in evidence the record of a proceeding in the names of persons alleging themselves to be surviving trustees of the North American land company, the object of which was to be relieved from the payment of so much of the purchase money bid by their agent Steed, as might remain after discharging the taxes and damages thereon and the costs of the sale. On the 5th of June 1845, a decree was entered in this proceeding, which recited that the first installment of the purchase money paid to the commissioners on the 14th of November 1842, the day of sale, exceeded the amount of taxes and damages and the costs of the sale, by the sum of seven dollars and fifty-seven cents; that the land was sold as the property of the petitioners as trustees of said company, and that the bond for the deferred installments was executed by Steed and his sureties on behalf of said trustees; and thereupon it was ordered and decreed *33 that Steed’s bond should be canceled; that the commissioners should pay to the petitioners the said sum of seven dollars and fifty-seven cents, and that the commissioners should be credited in their settlement with the commonwealth for the amount of the bond and the sum of seven dollars and fifty-seven cents.
The defendants also offered in evidence a deed dated the 25th ,of October 1851, executed by James M. Laidley the surviving commissioner of delinquent and forfeited lands in Kanawha county, to the North American land company, by that name and description, for the tract of sixteen thousand eight hundred acres.
The evidence of the defendants being closed, the lessors of the plaintiff offered in evidence the books of the commissioners of the revenue, and the delinquent lists of said county, to show that the said tract of six hundred and thirty acres granted to them had been duly entered on said books, charged with taxes, and had not been returned as delinquent.
They also introduced a witness, who deposed, that he was present at the sale of the sixteen thousand eight hundred acres of land before mentioned, by the commissioners of delinquent and forfeited lands; and at the instance of the patentee Lewis (one of the lessors of the plaintiff), gave public notice on the day of the sale, which was heard by the commissioners and J. M. Steed, who purchased the whole of the said sixteen thousand eight hundred acres of land as the agent of the North American land company; that the said Lewis and others had made a location and survey of six hundred and thirty acres of said land previous to that time; the same six hundred and thirty acres in controversy.
This being all the testimony, the defendants tendered a demurrer thereto, in which there was a joinder; and a verdict being rendered subject to the demurrer, judgment was rendered for the plaintiffs.
*34 Some objections were raised in the argument here, which appear not to have been anticipated in the preparation of the case in the court below. It is insisted that as the defendants relied upon an outstanding title in third persons to defeat a recovery, they should have exhibited the patent or copy thereof to Gallatin and Savary De Yalcoulon. In the report of the commissioners of delinquent and forfeited lands, being the commencement of the proceeding resulting in the sale aforesaid, the patent to Gallatin and S. De Valcoulon is referred to and recited, and a certified abstract thereof furnished to them by the register of the land office, in pursuance of law, is incorporated with and made part of the report. This being read without objection, should be regarded as prima facie evidence that such a grant had issued. If a more complete copy had been required, the matter should have beers brought to the notice of the party in the court below by a motion for an instruction as to the effect of the abstract as evidence. It would work a surprise to permit the objection made for the first time in argument here, to avail the party.
It is further maintained that there was no sufficient evidence to prove the identity of the land described in the patent for the sixteen thousand eight hundred acres. This objection is obviated by the proof adduced by the plaintiff, as to what occurred at the time of the sale by the commissioners of delinquent and forfeited lands. The proof showed that the lessors of the plaintiff knew the boundaries of the tract of sixteen thousand eight hundred acres, and gave notice to those present at the sale, that they had made a location and survey of six hundred and thirty acres thereof5 thus conceding that their patent of six hundred and thirty acres was included within the boundaries of the elder grant.
This brings us to the question really intended to be *35 presented by the record in this case; that is, whether under the evidence demurred to, taking it most strongly against the parties demurring, the patentees of the six hundred and thirty acres come within the provisions, or are entitled to the benefits of the 3d section of the act of March 22d, 1842. The tract of sixteen thousand eight hundred acres having been forfeited for the failure to enter the same on the books of the commissioner of the revenue, the forfeiture became complete, and the titlev absolutely vested in the commonwealth on the 1st of November 1836. Staats v. Board, 10 Gratt. 400. Of this forfeiture the grantees of the six hundred and thirty acres can claim no benefit under any law passed prior to the 22d of March 1842. All previous acts provided for bona fide grantees and actual 'Occupants, a class within which the grantees of the tract of six hundred and thirty acres do not fall. See the provisions of the previous laws cited and commented on ia Wild v. Serpel, 10 Gratt. 405. The 3d section of the act of March 1842 transfers the title of forfeited lands to such persons (other than those for whose default the title may have been forfeited) as had title or claim, legal or equitable, derived under a patent bearing date prior to the 1st of January 1843, dispensing with actual occupancy, and omitting the qualification of a bona fide claim of title in the junior patentee. Jn the case of Wild v. Serpel, the junior patent issued in 1836, and there was nothing to prevent the transfer of the forfeited title to the subsisting patentee, the instant the act of March 22d, 1842, took effect, unless in that case such a transfer was intercepted by the institution of proceedings and the decree for the sale of the land in controversy before the passage of the act aforesaid. A majority of the court held that this did not prevent the operation of the act. ¿íNo sale (the judge observed) had yet taken place ander the order; no right had been acquired by any *36 other person, and the title still was in the commonwealth, and fully within the control of the legislature.” And again, that it was competent to transfer the title “ as well after an order of sale as before, provided it were done before any new right was acquired by an actual sale being made under it.”
In the case under consideration, the report of the commissioners of delinquent and forfeited lands is dated 29th of September 1842, which being approved, the decree for sale was entered on the 13th of October 1842; and the sale was made on the 14th of November 1842, at which time so much of the purchase money as satisfied the taxes and damages and costs of sale was paid down, being all that the commonwealth exacted when the original owner became the purchaser of the land. These proceedings all took place before the 30th of December 1842, the date of the patent for the six hundred and thirty acres. The order confirming the sale, and directing the commissioners to make a deed to the purchaser, though dated on the 3d of June 1843, would relate back to the time of the sale.
The 3d section of the act of March 22d, 1842, transferred the forfeited title vested in the commonwealth to a person who had a title or claim, legal or equitable, held or derived from a grant from the commonwealth. By the policy of the various acts, hut two modes seem to have been contemplated for the disposition of these forfeited lands after the time allowed for redeeming them had expired. The title vested in the commonwealth by forfeiture could only be divested by a sále made under a decree of the judge or court, or by a transfer under the operation of law to a party who could deduce his title or claim from another patent. The act made the transfer to another patentee or one claiming under him, and not to a claimant of a mere equity under the common *37 wealth. The original owner himself, if he desired to retain his land, was constrained to become a purchaser, and to obtain a deed of conveyance from the commissioners of delinquent and forfeited lands. The law contained a provision by which under a proper proceeding he could be relieved from the payment of so much of the purchase money as was not required to pay the taxes and damages and costs of sale.
The patent for the six hundred and thirty acres recites that it was founded on a survey made on the 21st of June 1842, by virtue of land office treasury warrants. This was prior to the report of the commissioners of delinquent and forfeited lands of the 29th of September 1842. And it has been argued that the entry and survey conferred an equitable title prior to the report and sale of the commissioners; and as it was carried into grant before the first of January 1843, the patentees, under an equitable construction of the statute, should be preferred to the purchaser at the commissioners’ sale. This argument would have no ground to rest on unless forfeited lands could be located under a treasury warrant. The counsel therefore has found himself under the necessity of assailing the remark of the judge in his opinion delivered in Levasser v. Washburn, 11 Grratt. 572, “ that there was no act then in force authorizing forfeited lands to be entered as waste and unappropriated.” It will ajipear, however, from reference to the laws on the subject, that the observation of the judge was strictly correct. In 2 Rev. Code 528, will be found an act passed January 29th, 1803, which forfeited lands upon which the taxes should have remained unpaid for two years, and subjected them to location. But an act passed January 20th, 1807, 2 Rev. Code 530, declared that such forfeited lands should not be subject to location: and another act passed February 14th, 1811, 2 Rev. Code 536, provided that such .lands should remain the pro *38 perty of the commonwealth, and be subject to such future disposition as might thereafter bylaw be directed. An act of January 23d, 1812, 2 Rev. Code 536, provided that the taxes due or chargeable, or thereafteT to become due or chargeable on lands, should remain a lien upon said lands until discharged; and allowed further time for the redemption of all lands which had become or should become forfeited for the non-payment of taxes, and directed the lands to be sold after the time for redemption had expired. The time for redemption was subsequently enlarged, until by the act of February 9th, Í814, 2 Rev. Code 542, sales were again authorized. The act of February 20th, 1817, 2 Rev. Code 558, arrested the sales, and declared that the arrears of taxes and damages should continue a lien on the lands on which they were chargeable. Such lands were again made liable to entry, survey and grant as waste and unappropriated land, by the Code, ch. 114, § 3, p. 495; but it is believed there was no law in- existence in 1842 which authorized the location of forfeited lands by virtue of a land office treasury warrant. By such a warrant the adventurer was authorized to locate waste and unappropriated lands only. An entry on lands previously granted was a void act and conferred no equity.
As was remarked by the judge in the case of Levasser v. Washburn, “In the absence of a statutory provision authorizing the location of forfeited lands, no title could be acquired to such lands by entry and survey, and a patent obtained for them would be merely void.” The lessors of the plaintiff must therefore rest on their grant alone. Before it issued such proceedings were had under the act of March 30th, 1837, providing for the appointment of commissioners of delinquent and forfeited lands, and other subsequent acts in amendment thereof, as to confer rights which were not divested by the 3d section of the act of March 22d, *39 1842. Those laws were all in force at the same time. Up to the passage of the act of March 5th, 1846, Sess. Acts, p. 13, prohibiting further sales, the commissioners continued to make reports, and the courts and judges to enter decrees for sale. The laws being in yari materia, such construction is to be given to them as may reconcile and give effect to the various enactments they may contain. By some of these laws the agents of the commonwealth were required to make report, &c. and the judges and courts to order sales. The law of March 22d, 1842, transferred the forfeited titles under certain circumstances to subsequent grantees who should obtain a grant previous to the first of January 1843. Although such agents may have commenced a proceeding to sell under one set of laws, yet if no right had been acquired in virtue thereof, there was nothing to obstruct the transfer under the operation of the act of March 22d, 1842, to a subsequent patentee. But when, as in the present case, an actual sale had been made and the price paid, the purchaser has acquired rights of which the commonwealth could not deprive him without the imputation of bad faith. By virtue of the proceedings commenced and carried on by the agents of the commonwealth in pursuance of law, the beneficial ownership was transferred to him who had purchased and paid the price, provided the sale was not set aside. The acts making a transfer contemplated a transfer of the whole of the forfeited title. It could not have been intended to transfer the mere shell of the legal title forfeited to the commonwealth and remaining until conveyed to the purchaser. Until so conveyed, it must be held in subordination to his rights. I think, therefore, no beneficial interest continued in the commonwealth which was transferred to the patentees of the six hundred and thirty acre tract.
The only remaining question is, Whether the defendants in the court below could avail themselves of the *40 outstanding title forfeited and sold as aforesaid, to de~ feat a recovery in this action ? This suit was instituted before the present Code went into operation, and it is therefore not necessary to enquire what may be the effect of abolishing writs of right and substituting the action of ejectment in place of it in all cases. As a general rule, under the law when this suit was commenced, the plaintiff in ejectment must recover on the strength of his own title, and possession gives the defendant a right against every man who cannot show a good title. This general rule is subject to exceptions; thus it was decided in Middleton v. Johns, 4 Gratt. 129, that a person having held actual possession of land for more than fifteen years under color of title, and being then ousted by a mere trespasser without pretence of title, might recover in ejectment against the trespasser, although it did not appear that the land had ever been granted by the commonwealth. In Tapscott v. Cobbs, 11 Gratt. 172, the court held that where a party in peaceable possession of land is entered upon and ousted by one not having title to or authority to enter upon the land, the party ousted may recover in ejectment upon his possession merely': And his right to recover cannot be defeated by the defendant by showing an outstanding title in another with which the defendant had no connection. In the case under consideration, there was no evidence tending to prove that the lessors of the plaintiff were ever in the actual possession of the land, or any part thereof. Their grant did not even confer upon them constructive seizin. The commonwealth’s title to the land as part of her waste and unappropriated domain, had passed to the first grantees : And as the law did not authorize the location of forfeited lands, nothing passed to the junior grantee. The evidence introduced by the lessors of the plaintiff tended to prove that the defendants were in actual occupation of portions of the land, and that their pos *41 session and the possession of those under whom they entered, commenced long anterior to the date of the patent for the six hundred and thirty acres. They had that peaceable possession which the law protects against all except him who has the actual right to the possession, and it was competent for them to show a subsisting outstanding title in a third party, to defeat a recovery and protect such possession. This they have done by showing the grant to Gallatin and Savary De Valcoulon and the exhibition of the proceedingsj showing that title is claimed thereunder, by parties asserting a beneficial interest in the land.
I think on the demurrer to evidence the law was for the plaintiffs in error, the defendants in the court below, that the judgment should be reversed with costs, and judgment entered in their favor on the demurrer.
The other judges concurred in the opinion of Allen, P.
Judgment reversed, and entered for the appellants.